# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—MARCH TERM, 1829.

[PHILADELPHIA, MARCH 27, 1829.]

## The COMMONWEALTH *ex rel.* TAYLOR *against* LEEDS.

### HABEAS CORPUS.

The sister of a minor is competent, under the act of assembly of the 29th of *September*, 1770, to assent, as his next friend, to binding him apprentice to her own husband.

But such a transaction will be more strictly scanned, than where the binding is to a stranger; and if the contract be tainted with fraud or collusion, the apprentice will be discharged.

He will not, however, be discharged of course, where the covenants appear to be reasonable and proper on the face of the indenture, especially where the application is not made till the apprentice has ceased to be a burden.

A WRIT of *Habeas Corpus* having issued, commanding *Gurdon Leeds* to bring before the court the body of *Henry Taylor*, together with the cause of his detention, he returned that he held the said *Henry Taylor* by virtue of a certain indenture of apprenticeship, by which it appeared, that the said *Henry Taylor*, then aged fifteen years, had, on the 4th of *July*, 1825, *with the consent of his sister, Margaret Leeds*, (the wife of the said *Gurdon Leeds*,) acting as his next friend, his parents being dead, put himself apprentice to the said *Gurdon Leeds*, to learn the trade of a cabinet maker, to serve five years, six months, and twenty-four days; during which time the master covenanted to find him in boarding, lodging, and washing, to give him one quarter's night-schooling, and, when free, one new suit of clothes.

On this return, it was contended by *P. A. Browne*, for the minor, that he was entitled to be discharged from the service of his master.

(The Commonwealth, ex rel. Taylor, *v.* Leeds.)

At common law, (he said,) the deed of an infant is absolutely void.   Even an indenture of apprenticeship entered into for his in- struction and benefit, is not valid.  2 *Inst.* 379.  3 *Leon.* 637.  7 *Mod.* 15.   But the act of assembly of the 29th of *September*, 1770, declares, that "all and every person and persons that shall be bound by indenture to serve as an apprentice in any art, mystery, occupation, or labour, with the *assent* of his or her parent, guar- dian, or next friend, or with the assent of the overseers of the poor, and approbation of any two justices, although such persons, or any of them, were or shall be within the age of twenty-one years at the time of making their several indentures, shall be bound to serve," &c.   The question then is, whether the sister of the infant, *being the wife of the master*, was such a *next friend* as the act contem- plated?   No objection can be raised to the relationship of sister, who may, in ordinary cases, act as next friend where the parents are deceased: nor does the objection arise from her coverture; for a married woman may in some cases give her assent to the binding of her child. *The Commonwealth* v. *Eglee*, 6 *Serg. & Rawle*, 340. The objection is, that a feme covert cannot, as the next friend of her brother, assent to a binding to *her own husband*.   It is one of those glaring cases of conflicting interests, in which the policy of the law obeys the precept of religion, "Lead us not into temptation." The obvious duty of a next friend in binding an apprentice, is to obtain the best terms for the infant; but how could the wife be ex- pected to perform the office with fidelity, under the powerful influ- ence, not only of duty to her husband, but of her own interest? The truth of this remark is strongly exemplified by the present in- denture, which provides for only one quarter's night-schooling during a period of many years' service.   Another duty of a next friend is to watch over the conduct of the master, and even of the mistress, upon whom much of the comfort of the apprentice must depend, and take care that the covenants in favour of the apprentice are duly performed.   But it is obvious that this duty cannot be per- formed where the next friend is herself his mistress, and the wife of the master.   But this indenture is void, not only on principle, but authority.   In the case of *The Commonwealth* v. *Kendig*, 1 *Serg. & Rawle*, 366, an attempt was made to support an indenture upon the assent of one of these nominal next friends, but it failed.   There *Cyrus Pearce*, who held the infant under an indenture, acted as next friend in binding her, by a second indenture, to *J. H. Baker;* and Chief Justice TILGHMAN, in delivering the opinion of the court, said, "I think it would be of dangerous consequence to admit, that a man who is about to sell his apprentice, should take the place of *next friend*, because he must be supposed to be acting for his own interest, which is incompatible with the idea of a guardian."   In the present case the next friend was acting for *her own interest* in making unfavourable terms for the infant, since her interest is iden- tified with that of her husband.   It is to be observed, that the late

(The Commonwealth, ex rel. Taylor, *v.* Leeds.)

CHIEF JUSTICE considered the acting as next friend as tantamount to an assumption of guardianship; and, according to *Osborne's* case, *Plowd.* 293, where a woman guardian marries, the husband partakes of her rights as guardian; so that the assent here given was, in point of law, the assent of *Gurdon Leeds* to a binding to himself, which is clearly illegal and void.

2. The indenture in question not only purports to have been made with the assent of the sister as next friend of the infant, but she has covenanted for the performance of certain things on the part of the infant. It corresponds, in substance, with the instrument upon which the case of *Mead* v. *Billings*, 10 *Johns. Rep.* 99, was determined, in which the guardian was held liable upon the covenants to be performed by the infant. But how can a married woman enter into a covenant, particularly with her husband? In *The Commonwealth* v. *Eglee*, there were no covenants on the part of the feme covert, but merely an assent given to the binding. In the present instance, the wife acted in conjunction with her husband, and the presumption of law is, she acted under his coercion. A felonious taking of goods, under such circumstances, would not subject her to an indictment for larceny. A transfer of her estate, under such circumstances, would be void.

*F. W. Hubbell*, for the master, argued, 1. That Mrs. *Leeds* answered the description of *"next friend"* in the act of assembly. The father and mother being dead, and the infant having no brother who had attained the age of twenty-one years, the duties of guardianship and maternity devolved on his eldest sister, who was emphatically his *" next friend."* The act of assembly contains no such exception as coverture.

2. According to the strict technical rule of law, the disability of coverture extends to acts in favour of third persons, as well as to those in favour of the husband. In the latter case, they are void upon the same *principle* as in the former; they differ only in *degree*. When, therefore, it was decided in *The Commonwealth* v. *Eglee*, that a feme covert may give her assent as a next friend to the binding of a minor, under our act of assembly, the present case was decided in principle. In the case just referred to, the nature of the *assent* required is thus defined: *"*It is a personal confidence reposed in her by the act of assembly: she parts with no property, divests herself of no interest.*"* A power or confidence reposed in a married woman, unaccompanied by any *interest*, may well be exercised by her in favour of her husband, though the exercise of it require discretion; as a power of sale, &c. *Co. Litt.* 112. 4 *Cruise*, 181. *Tyser* v. *Williams*, 3 *Bibb's Rep.* 368.

3. The cases of purchases by executors, trustees, &c. at their own sales, have no analogy to the present case, although such an identity of the wife with the husband be admitted, as to render the exercise of a power in favour of the husband, in effect an exercise of it in her own favour; for at law such a purchase by an executor or trustee,

(The Commonwealth, ex rel. Taylor, *v.* Leeds.)

when made in the name of a third person, is good. Equity inter-
feres on the ground of policy. A case like the present has never
been agitated in courts of equity, and *technical* rules of equity,
which preclude inquiry into the *real* equity of the case, are not to
be extended beyond their letter. Equity avoids such a sale, by
putting the purchaser in *statu quo*, returning to him the purchase
money with interest, a tender of which is essential to the *cestui
que trust's* claim of relief. *Sug. on Vend.* 433. But, on the pre-
sent occasion, no offer is made of compensation to the master, for
the instruction and sustenance of the apprentice during the time he
has been with the master. Hitherto, he has been only a burden:
his services, after he shall have acquired the trade, have been looked
to as a requital.

4. The present argument goes no farther than that the fact of the
next friend in the indenture being the wife of the master, does not
*per se* vitiate the instrument. If there be *actually* undue influence,
the case is otherwise. It is even conceded that the law regards
such a transaction with jealousy. But if this indenture be subject-
ed to the strictest scrutiny, it must be sustained; for there is no ex-
traneous proof of undue influence, and on the face of the indenture
all the usual covenants are to be found. It has been objected, that
the schooling provided for is not sufficient: to this it may be an-
swered, that the boy was considerably beyond the usual age of bind-
ing, and so advanced in his education that he did not need more
schooling than was stipulated for.

5. The act of assembly does not require the next friend to enter
into any covenants, but merely to give assent; consequently the co-
venants by the next friend, in this indenture, were merely surplus-
age, and could not vitiate it; *utile, per inutile, non vitiatur*. The
covenants on the part of the next friend being entirely in favour of
the master, he alone can object to the indenture, if they are void.

The opinion of the court was delivered by

GIBSON, C. J.—There must undoubtedly be an actual, and not
merely a formal next friend. His office, however, is not to bind
the apprentice, but to allow the apprentice to bind himself. The
covenants of the apprentice, although executed under the supervi-
sion of those whom the law has set over him, are exclusively his
own. Such are the provisions of the act of assembly, and such was
the construction of it in *The Commonwealth v. Eglee.* The prac-
tice has, for the most part, been for the *prochein amy* to express
his assent by sealing the indenture; but no one ever thought of
having recourse to him on the contract; at least no instance of the
sort has fallen under my notice. The reason is, that the legislature
has not said that he shall become a party. The assent is sometimes
expressed by subscribing as a witness; but neither in the one case
nor in the other, has the *prochein amy* considered that he was con-
tracting any responsibility for the apprentice. His covenant, if any

(The Commonwealth, ex rel. Taylor, *v.* Leeds.)

existed, would be joint.   But that would be inconsistent with his power, which is not to subject, by any act of his, the person of the apprentice to the dominion of the master: that can be done only by the apprentice himself.   The *prochein amy* can join in the act, only so far as the law gives him authority; and, by the terms of the act of assembly, his agency is not to be active, but passive.   This point was expressly ruled in *The Commonwealth* v. *Eglee*, where the coverture of the *prochein amy* would have afforded a decisive objection, if she had been considered a party to the deed.   That case establishes, also, that the subjection of a *feme covert prochein amy* to her husband's will, is not, in contemplation of law, inconsistent with the free exercise of her will in the execution of her trust; and this, in analogy to the common law, which permits a wife to act in a representative capacity and independent of her husband, wherever the subject matter is unconnected with his interest or marital rights.   The pinch of the case, here, is that the binding was to the husband.   But in equity, and even in some instances at the common law, wherever a feme covert has power to act as if she were sole, she may treat directly with the husband.   As, however, the matter depends on construction, it is urged that expediency requires that the act of assembly be so interpreted as to avoid the tendency to abuse of power which must necessarily exist in every case like the present.   That would be a grave consideration, were abuses of the sort without redress.   But an effectual corrective is found in the supervising power of the judges, who are bound to discharge wherever the contract is shown to be tainted with actual fraud or collusion; and, in a case like the present, the transaction would be more strictly scanned than if the binding were to a stranger.   We will not, however, discharge of course, where, as in this case, the covenants appear reasonable and proper on the face of the indenture; especially where the application is not made till the apprentice has ceased to be a burden.   It is objected, that the quantum of schooling is unreasonably small.   It appears, however, from the apprentice's signature to the indenture, that he wrote a fair hand; and the great object of the binding being to learn the art and mystery of the master, I would hold an indenture valid without any covenant for schooling at all, if it should appear that the education of the apprentice had been sufficiently attended to before.   It therefore appears to a majority of the court, that no reason has yet been shown why the apprentice should not be remanded.

Tod, J., dissented.

                                        Apprentice remanded.